## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | |
|---|---|
| In re<br><br>LIGADO NETWORKS LLC, *et al.*,<br><br>          Debtors. | Chapter 11<br>Bankr. Case No. 25-10006 (TMH)<br><br>(Jointly Administered) |
| AST & SCIENCE LLC and LIGADO NETWORKS LLC,<br><br>          Appellants,<br><br>   v.<br><br>INMARSAT GLOBAL LIMITED<br><br>          Appellee. | Civil Action No. 26-cv-1445<br><br>On Appeal from the United States District Court for the District of Delaware<br><br>Case No. 26-cv-00118 (GBW) |

## EMERGENCY MOTION OF APPELLANT AST & SCIENCE LLC
## TO VACATE STAY PENDING APPEAL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv

PRELIMINARY STATEMENT ...........................................................................1

BACKGROUND .................................................................................................7

I. The AST Transaction: The Cornerstone of Ligado's Chapter 11 Plan. ...............................................................................................7

II. The Mediated Agreement and Mediation Order ......................................8

III. The August Motions to Enforce. ............................................................9

IV. Plan Confirmation. .................................................................................12

V. The FCC Application. ............................................................................12

VI. Inmarsat Files The NY Action. .............................................................13

VII. Ligado and AST Move to Enforce the Mediated Agreement ................14

VIII. Bankruptcy Court Hearing and Decision. .............................................15

IX. Inmarsat Appeals and the District Court Grants the Stay Pending Appeal...............................................................................................17

JURISDICTION.................................................................................................17

A. The Court Has Jurisdiction Under 28 U.S.C. § 1292(a)(1) Because the Stay Order Has the Practical Effect of an Injunction with Irreparable Consequences....................................18

B. The Court Also Has Jurisdiction Under 28 U.S.C. § 158(d)(1) Because the Stay Order Is Tantamount to a Final Order . ............19

THE STAY PENDING APPEAL SHOULD BE VACATED ON AN EXPEDITED BASIS ..................................................................................20

ARGUMENT .....................................................................................................21

THE STAY PENDING APPEAL SHOULD BE VACATED ..............................21

A. Inmarsat Cannot Show Irreparable Harm. ....................................22

B. Inmarsat Will Not Succeed on the Merits....................................26

C. AST and Ligado Would Be Irreparably Harmed By a Stay. ........28

D. The Public Interest Disfavors a Stay............................................30

INMARSAT MUST POST A BOND .......................................................................31

CONCLUSION ..................................................................................................32

# TABLE OF AUTHORITIES

CASES                                                                PAGE(S)

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79, 67 L. 2d. 2d 59 (1981) .............................................................18

*Connecticut Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ..........................................................................................18

*Glencore Ltd. v. Degussa Engineered Carbons L.P.*,
    848 F. Supp. 2d 410 (S.D.N.Y. 2012) ...........................................................24

*Haberern v. Lehigh & N. E. Ry. Co.*,
    554 F.2d 581 (3d Cir. 1977) ............................................................................19

*Holland v. Rosen*,
    895 F.3d 272 (3d Cir. 2018) ............................................................................21

*In re Broadstripe, LLC*,
    402 B.R. 646 (Bankr. D. Del. 2009) ...............................................29, 30, 31

*In re Cont'l Airlines*,
    91 F.3d 553 (3d Cir. 1996) ..............................................................................30

*In re Essar Steel Minn. LLC*,
    2025 WL 974571 (D. Del. Apr. 1, 2025) ......................................................25

*In re Mallinckrodt plc*,
    2022 WL 1206489 (D. Del. Apr. 22, 2022) ..................................................26

*In re Mkt. Square Inn, Inc.*,
    978 F.2d 116 (3d Cir. 1992) ............................................................................19

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015) ................................................................ *passim*

*In re Trans World Airlines, Inc.*,
    18 F.3d 208 (3d Cir. 1994) ..............................................................................20

*In re Tribune Co.*,
    477 B.R. 465 (Bankr. D. Del. 2012) ........................................................31, 32

*In re World Trade Ctr. Disaster Site Litig.*,
    503 F.3d 167 (2d Cir. 2007) ............................................................................22

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012) ........................................................................21, 31

*Jackson v. Danberg*,
 656 F.3d 157 (3d Cir. 2011) .......................................................................18

*Matter of Forty-Eight Insulations, Inc.*,
 115 F.3d 1294 (7th Cir. 1997) ...................................................................19

*Maxus Energy Corp.*,
 633 B.R. 215 (Bankr. D. Del. 2021) ...........................................................25

## Statutes

11 U.S.C. § 362(a)(3) ...................................................................................15

28 U.S.C. § 158(d)(1) ...................................................................................19

28 U.S.C. § 1292(a)(1) ............................................................................18, 19

## Other Authorities

Fed. R. App. P. 8(a) ................................................................................20, 21

Fed. R. Bankr. P. 8025(d)(3) .......................................................................21

Local Appellate Rule 27.7 ...........................................................................21

AST & Science LLC ("**AST**"), for its Emergency Motion to Vacate Stay Pending Appeal, respectfully states as follows.  In support of this motion, AST submits herewith the Declaration of Jennifer A. Manner (the "**Manner Declaration**"), which is incorporated herein by reference.

## PRELIMINARY STATEMENT[1]

Ligado has the FCC Application pending with the FCC regarding the use of L-band spectrum shared by Ligado and Inmarsat. The comment period for the Application expires on Monday, March 2. Hence the emergency. Ligado's Chapter 11 plan of reorganization, which provides for AST to use the L-band spectrum and provide Ligado a very substantial revenue stream to fund the reorganized Ligado, will go effective *only if* FCC approval of the Application is obtained. To achieve Inmarsat's cooperation in the FCC process, AST agreed to fund payments by Ligado to Inmarsat of $535mm—$420mm of which has already been funded by AST on or about October 31, 2025 and paid over to Inmarsat at that date. Inmarsat, in turn, is required to support the FCC Application so long as two conditions described below have been satisfied. The Bankruptcy Court, which has been presiding over these Chapter 11 cases for 13 months, and which held multiple hearings *on the very issue of whether the conditions have been satisfied,* determined in no uncertain terms that

---

[1]     Capitalized terms used but not defined in the Preliminary Statement are defined below.

those conditions **have been satisfied** and compelled Inmarsat to support the FCC Application. Based on these findings and its common sense determination that there can be no irreparable harm here (for a plethora of reasons described below), the Bankruptcy Court refused Inmarsat's request for a stay. Despite the Bankruptcy Court's careful findings on the ultimate question of whether the parties' use of the L-band spectrum has been coordinated, the District Court has imposed a stay.

For the reasons set forth at length below and in the Manner Declaration, the District Court is mistaken—it is Ligado and AST, in particular, that will suffer irreparable harm unless the Stay Order is lifted on or before Monday, March 2. In fact, just hours after the District Court imposed a stay, Inmarsat filed papers with the FCC *opposing* Ligado's FCC Application. AST has funded the *nonrefundable* payment to Inmarsat of $420mm, which Inmarsat took with the express understanding that it would support the FCC Application. Therefore, AST respectfully submits that it is just and proper for this Court to enter an order lifting District Court's stay of the Bankruptcy Court' Order (which would require Inmarsat to withdraw its opposition and file papers in support of the FCC Application), to avoid imposing further irreparable harm on AST.

Furthermore, the District Court has issued the stay without the requirement of a bond. AST has funded the payment to Inmarsat of $420mm (with another $100mm payable on March 31, 2026) precisely for its support obligations, as the Bankruptcy

Court found. AST risks extraordinary harm unless the stay is lifted because Inmarsat has no obligation to refund the monies received by Inmarsat if FCC approval is not granted. Therefore, AST respectfully requests that this court (1) immediately vacate the stay imposed by the District Court; or (2) if this Court does not lift the stay, then impose a bond requirement of not less than $520mm in order to protect AST.

Inmarsat, having accepted ***$420 million*** of AST's money pursuant to the carefully crafted terms of the Mediated Agreement, is contractually obligated to uphold its Regulatory Support Obligations and support Ligado's FCC Application seeking permission to operate its payloads on AST's proposed non-geostationary satellite orbit system to be operated in the L-band electromagnetic frequency spectrum (the "**L-Band Spectrum**") in North America (the "**Proposed NGSO System**"). Time is of the essence. If Inmarsat does not provide its bargained-and-paid-for support of the FCC Application by March 2—or worse does not withdraw its opposition to the FCC Application—the entire regulatory approval process for the Proposed NGSO System could be materially and adversely affected and AST (and Ligado) would be irreparably harmed.

The United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), which approved and authorized the Mediated Agreement, and has overseen the various disputes between the parties for over a year, understood the potential consequences that would result if Inmarsat was allowed to violate the

automatic stay and avoid its Regulatory Support Obligations. Thus, it rightly directed Inmarsat to perform under the Mediated Agreement. Yet the District Court disregarded the Bankruptcy Court's well-reasoned and thorough decision (the "**Decision**"), *see* Ex. A,[2] and issued an order earlier today, February 27, 2026 (the "**Stay Order**" (Dist. Dkt. No. 46))[3]; enabling Inmarsat to continue prosecuting a clear violation of the automatic stay and to continue shirking its Regulatory Support Obligations.

Indeed, the Bankruptcy Court—which presided over the entry into, and approved the terms of, the Mediated Agreement—expressly determined that:

- No additional coordination process is required. *See* Ex. A 18:20-25; 19:1-11.

- The Mediated Agreement does not condition Inmarsat's Regulatory Support Obligations on "Inmarsat's subjective satisfaction that coordination has been sufficient." *Id.* at 19:12-17.

- The two necessary preconditions to Inmarsat's Regulatory Support Obligations have been satisfied, *id.* at 20:1-7, and Inmarsat is required to support Ligado's FCC Application. Ex. B ¶ 3.

In its Memorandum Decision (the "**Stay Mem.**" (Dist. Dkt. No. 45)),[4] the District Court incorrectly determined that the Stay Pending Appeal was warranted

---

[2]    References to an "Ex." are to the exhibits appended to the Declaration of Henry V. Hutten submitted contemporaneously herewith.

[3]    References to a "Bankr. Dkt. No." are to the docket entries in the above-captioned Chapter 11 cases. References to a "Dist. Dkt. No." are to the docket entries in the above-captioned District Court case.

[4]    The District Court's Stay Order and Memorandum Decision are attached to the Hutten Declaration at Exhibits L and M, respectively.

under the false impression that Inmarsat would be irreparably harmed (and AST and Ligado would not be) if Inmarsat had to uphold its contractual obligations to support the FCC Application. As the Bankruptcy Court found, Inmarsat's position is unsupported by the Mediated Agreement and poses potentially "catastrophic" harm to AST and Ligado. Ex. A 22:3-5. AST respectfully submits that the Stay Order should be vacated immediately because Inmarsat will suffer no harm whatsoever in the absence of a stay pending appeal.

Vacating the Stay Order is necessary because AST and Ligado will be irreparably harmed without Inmarsat's regulatory support and by Inmarsat's opposition to the FCC Application, while any potential for harmful interference with Inmarsat's satellite services is in no way imminent, is temporally remote and is entirely speculative. *See* Manner Decl. ¶ 30.[5] The Proposed NGSO System has not been approved by the Regulatory Authorities and no satellites have been launched. The risk of harmful interference with Inmarsat's satellites during the pendency of this appeal, if Inmarsat is required to honor its obligation to support the FCC Application, is nonexistent. Additionally, Inmarsat has no risk of irreparable harm at any point in time because the Mediated Agreement contains "Coordination Breach Procedures," setting forth an extremely expedited process for obtaining injunctive relief for any harmful interference caused by operation of the Proposed NGSO

---

[5]     The Manner Declaration is attached as Exhibit N to the Hutten Declaration.

System.  Under Third Circuit precedent, Inmarsat's lack of irreparable harm required rejection of Inmarsat's request for a stay pending appeal "without further analysis." *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015).

Nor can Inmarsat satisfy the remaining factors required to obtain a stay pending appeal. Inmarsat will not succeed on the merits.  The Bankruptcy Court's carefully reasoned Decision was compelled by the unambiguous terms of the Mediated Agreement.

Importantly, it is AST and Ligado that will be irreparably harmed if Inmarsat fails to support the FCC Application, or is not required to withdraw its late-breaking opposition to the FCC Application, as the Bankruptcy Court expressly determined. Ex. A at 22:6-16. Neither the AST Transaction nor Ligado's Chapter 11 Plan can be consummated without the regulatory approval that Inmarsat committed (and was paid $420 million of AST's money) to support. Inmarsat's breach of its Regulatory Support Obligations jeopardizes AST's "unique" opportunity to "obtain usage rights to the L-[B]and [S]pectrum." *Id.* at 22:6-13. A stay would also undermine the strong public interest in promoting the successful rehabilitation of debtors in Chapter 11 cases.

As the Bankruptcy Court recognized, if Inmarsat can "withhold the regulatory support that it committed to make based on interpretations" of the Mediated Agreement that are "contrary to [its] plain language," this would "give Inmarsat

improper leverage to extract additional concessions." *Id.* at 22:22-23:1. This Court too should reject Inmarsat's gambit to flout its Regulatory Support Obligations as leverage to obtain more than it agreed to in the Mediated Agreement.

AST has paid $420 million (so far) for Inmarsat's regulatory support. Because the FCC opened its 30-day comment period for the FCC Application on January 30, 2026, Inmarsat has only until *March 2, 2026* to fulfill its Regulatory Support Obligations, and Inmarsat's pending objection before the FCC could irrevocably harm the FCC Application's chances of success. It is therefore imperative that this Court vacate the Stay Order and make clear that the Bankruptcy Court's Order remains in place and effective by no later than **12:00 PM EST on Monday, March 2, 2026** to avoid the irreparable harm to AST that would result if Inmarsat fails to timely support the FCC Application.

## BACKGROUND

I.     **The AST Transaction: The Cornerstone of Ligado's Chapter 11 Plan.**

The cornerstone of the restructuring of Ligado Networks LLC ("**Ligado**," and with its affiliated Chapter 11 debtors, the "**Debtors**") in its Chapter 11 cases is a transaction (the "**AST Transaction**") whereby, in exchange for the right to access Ligado's L-Band Spectrum, AST will provide Ligado with a substantial revenue stream to fund its post-Chapter 11 business. The AST Transaction, and the effectiveness of Ligado's confirmed Chapter 11 plan of reorganization (the "**Plan**"),

remains subject to approval by the Federal Communications Commission (the "**FCC**") and the Innovation, Science and Economic Development Canada ("**ISED**," and, with the FCC, the "**Regulatory Authorities**").

On March 22, 2025, Ligado filed a motion (Bankr. Dkt. No. 352) seeking to enter into the AST Transaction. Inmarsat objected to that motion because it wanted to be paid its alleged $550 million cure claim under its longstanding cooperation agreement (as amended and restated from time to time, the "**Cooperation Agreement**") with Ligado. The Cooperation Agreement addressed, *inter alia*, coordination of the rights of Inmarsat and Ligado to use their FCC-licensed L-Band Spectrum.

## II.     The Mediated Agreement and Mediation Order.

Inmarsat's objection was resolved through months of mediation, and extensive negotiation that resulted in a binding mediated agreement (the "**Mediated Agreement**"). *See* Ex. C-1. On June 23, 2025, the Bankruptcy Court entered an order (the "**Mediation Order**") approving the AST Transaction and the Mediated Agreement. *See* Ex. C. In the Mediation Order, the Bankruptcy Court retained jurisdiction "with respect to all matters arising from or related to the implementation, interpretation, and enforcement of [the Mediated Order], including enforcement of the Mediated Agreement." *Id.* at 4.

The Mediated Agreement provides for AST to fund $535 million of payments

to Inmarsat. The first installment of $420 million was *indefeasibly* paid by AST in October 2025. Ex. C-1 § 4.

Section 2 of the Mediated Agreement requires Inmarsat to "affirmatively support" Ligado's regulatory applications relating to the Proposed NGSO System provided that two conditions are met. *Id.* at § 2. The "two conditions" in Section 2 require that regulatory applications:

> (i) state that the operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties; and

> (ii) request that the FCC and ISED recognize that the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement and give effect to such agreements by licensing the Proposed NGSO System to operate in accordance with the terms of such agreements.

The Mediated Agreement states that "[t]he applications will not be more granular in respect of prong (ii)" above. *Id*. at n.8. Inmarsat also must "refrain[] from taking any public or private action contrary to any of" its regulatory support obligation (the "**Regulatory Support Obligations**") contained in the Mediated Agreement. *Id.*

## III.    The August Motions to Enforce.

The Mediated Agreement required AST and Inmarsat to execute a separate agreement, (the "**Inmarsat-AST Agreement**,") giving each party rights against the other "in connection with any" alleged "Coordination Breach." *Id.* at n.5. The

Mediated Agreement also required Ligado and Inmarsat to execute an amended and restated version of the Cooperation Agreement (the "**Amended Inmarsat Cooperation Agreement**"), with Sections 2–4 of the Mediated Agreement "to be incorporated" therein. *Id*. at n.6. Ligado, Inmarsat and AST negotiated the terms of the Inmarsat-AST Agreement and the Amended Inmarsat Cooperation Agreement but reached an impasse when Inmarsat attempted to insert anti-competitive provisions into the these agreements that AST had already rejected when negotiating the Mediated Agreement, and which were therefore excluded from the bargain reflected in the Mediated Agreement approved by the Bankruptcy Court. *See* Manner Decl. ¶ 15.

On August 14, 2025, Inmarsat filed a motion with the Bankruptcy Court, seeking to incorporate this anti-competitive language into its direct agreements with AST and Ligado and to "compel" AST's specific performance under the Mediated Agreement. Ex. D at Conclusion. Inmarsat argued—*in direct contravention of its position before the District Court*—that "section 105(a) of the Bankruptcy Code, the [Mediation] Order, and the Mediated Agreement" were the only "statutory and legal predicates" necessary to compel AST's specific performance. *Id.* p.1, ¶ 14. Ligado filed a cross-motion, which AST joined.

Following a hearing before the Bankruptcy Court on August 29, 2025 (the "**August 29 Hearing**") to consider Inmarsat's motion and Ligado's cross-motion,

the Bankruptcy Court directed the parties "to include the language that is specifically identified in the [Mediated Agreement]" into the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement. Ex. E 30:8-9; *see also* Ex. F ¶ 3.

On September 21, 2025, (i) AST and Inmarsat executed the Inmarsat-AST Agreement, incorporating Sections 2-3 of the Mediated Agreement, *see* Ex. G, and (ii) Ligado and Inmarsat executed the Amended Inmarsat Cooperation Agreement, incorporating Sections 2-4 of the Mediated Agreement.

The Mediated Agreement, the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement contain AST and Ligado's promise that the operations of the Proposed NGSO System will "be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement." Ex. C-1 § 2. This promise is enforceable because Section 3 of the Mediated Agreement includes Coordination Breach Procedures allowing Inmarsat to seek highly expedited injunctive relief for an alleged breach of the "technical and/or geographical limitations of the Amended Inmarsat Cooperation Agreement" that is "caused by the operations of the Proposed NGSO System." *Id.* at § 3. Indeed, on the basis of this promise, Inmarsat agreed in the Mediated Agreement that Ligado could represent to the Regulatory Authorities that "the operations of the Proposed NGSO System have been coordinated subject to the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement." *Id.*

at § 2.

**IV. Plan Confirmation.**

On September 29, 2025, the Bankruptcy Court confirmed the Plan. FCC approval of the AST Transaction is a condition precedent to the "effectiveness" of the Plan. Bankr. Dkt. No. 1007-1 at Art. IX(A)(17).

**V. The FCC Application.**

On December 8, 2025, Ligado filed an application (the "**FCC Application**") seeking the FCC's permission to use its payloads in the L-Band Spectrum while those payloads are affixed to AST's spacecraft in the Proposed NGSO System. *See* Ex. H. AST expressly endorsed this Application. *Id.* at 42. The FCC Application clearly "meet[s] the two conditions" in Section 2 of the Mediated Agreement set out above. First, it reflects the agreement by Ligado and AST that the Proposed NGSO System's spacecraft will remain within the technical, geographic and other limitations of the Amended Inmarsat Cooperation Agreement. Second, it requests the FCC recognize that the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement. *Id.* at 12. Moreover, "the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement," Ex. C-1 § 2, because the Inmarsat-AST Agreement and the Amended Inmarsat Cooperation

Agreement incorporate Sections 2 and 3 of the Mediated Agreement, which, as shown above, contain AST's enforceable promise to operate the Proposed NGSO System within the metes and bounds of the Amended Inmarsat Cooperation Agreement, and provide Inmarsat with a highly expedited remedy if the operations of the Proposed NGSO System exceeds those limits.

Thus, as the Bankruptcy Court determined, the FCC Application "contains the statements, substantially in the form that were required by Section II of the [M]ediated [A]greement," Ex. A 12:19-21, and the "FCC [A]pplication accurately states that operations will be consistent with and remain within" the limitations "of the Amended Inmarsat Cooperation Agreement." *Id.* at 20:1-4. Because "both conditions have been satisfied," *id.* at 20:6-7, Inmarsat must support the FCC Application and **"refrain[] from" any "action contrary to" this obligation**. Ex. C-1 § 2 (emphasis added).

## VI.    Inmarsat Files the NY Action.

On December 19, 2025, and without asking the Bankruptcy Court for relief from the automatic stay imposed by section 362 of the Bankruptcy Code, Inmarsat commenced a lawsuit (the "**NY Action**") in New York State Court (the "**NY Court**") against Ligado and AST, seeking to avoid its Regulatory Support Obligations. In the NY Action, Inmarsat asserts wrongly that AST and Ligado breached their obligations under the Mediated Agreement because additional coordination,

apparently to Inmarsat's subjective satisfaction, was needed before Ligado could file the FCC Application. *See* Ex. I ¶¶ 62-64.  In violation of its express obligation to refrain from taking action contrary to the FCC Application, Inmarsat has also stated in the NY Action that it "intends to petition the **FCC to deny** the [FCC] [A]pplication." *Id.* at ¶¶ 7, 59 (emphasis added).

## VII.   Ligado and AST Move to Enforce the Mediated Agreement.

On January 2, 2026, Ligado and AST filed motions (the "**Emergency Motions**") to enforce the automatic stay under Section 362 of the Bankruptcy Code and to compel Inmarsat to perform its Regulatory Support Obligations.

Inmarsat filed an objection, contending that (1) the NY Action did not violate the automatic stay, (2) the Bankruptcy Court could not order specific performance without an adversary proceeding; and (3) its Regulatory Support Obligations were not triggered until the parties agreed upon *further* amendments to the Amended Inmarsat Cooperation Agreement.   This third contention **flatly contravened** *Inmarsat's prior statements* to the Bankruptcy Court that, pursuant to the Mediated Agreement:

> [B]oth Ligado and AST are bound to honor the *existing* geographic and other limits of the Cooperation Agreement (*whatever they may be*)" and that the "existing limits" in "the Cooperation Agreement *do not need to change*."

Ex. J ¶ 4 (emphasis added). Indeed, Inmarsat told the Bankruptcy Court in connection with the disputes last August that it "*agrees* that the Mediated Agreement

imposes no *additional limits* on AST or Ligado beyond those in the Cooperation Agreement." *Id.* at ¶ 6 (emphasis in original).

## VIII.  Bankruptcy Court Hearing and Decision.

The Bankruptcy Court conducted a hearing on the Emergency Motions on January 14, 2026. On January 27, 2026, the Bankruptcy Court issued its thorough and well-reasoned Decision, rejecting each of Inmarsat's arguments. Ex. A.

*First*, the Bankruptcy Court determined that Inmarsat violated the automatic stay imposed by section 362(a)(3) of the Bankruptcy Code. *Id.* at 14:5-15:8.

*Second*, the Bankruptcy Court rejected Inmarsat's contention that additional coordination of the Proposed NGSO System was necessary by stating:

> So, this language [in the Mediated Agreement] requires a statement that coordination exists under and pursuant to [the Inmarsat-AST Agreement and Amended Inmarsat Cooperation Agreement], but not that some additional coordination process beyond the agreement[s'] terms has been completed.
>
> Footnote 8 to Section 2 [of the Mediated Agreement] expressly states the [FCC] application[] will not be more granular . . . and this provision directly refutes any argument that the FCC [A]pplication must contain detailed technical specifications or elaborate coordination documentation beyond the statements required by condition 2. . . . So, Inmarsat's interpretation that extensive additional coordination must occur before the FCC [A]pplication can be filed is irreconcilable with the parties' explicit agreement that the application will not be more granular.
>
> The [M]ediated [A]greement also does not state that the parties must negotiate or complete additional technical exhibits before filing the FCC [A]pplication, and it doesn't . . . condition Inmarsat's regulatory support on Inmarsat's subjective satisfaction that coordination has been sufficient.

> By executing the [A]mended Inmarsat [C]ooperation [A]greement and the Inmarsat[-]AST [A]greement, AST and Ligado committed that operations of the [P]roposed NGSO [S]ystem would comply with the cooperation agreement's terms.

*Id*. at 18:20-19:21. The FCC Application therefore satisfied both conditions precedent to Inmarsat's Regulatory Support Obligations. *Id*. at 20:1-7.

The Bankruptcy Court also ordered specific performance. *Id.* at 21:3-23:4. "[C]ompelling Inmarsat to honor its" obligations "causes Inmarsat no cognizable harm" because "it has agreed to those obligations and has been paid." *Id.* at 21:23-23:4. Meanwhile, "[f]ailure to obtain the regulatory approval would likely result in failure of the [P]lan, causing catastrophic harm to the estates and their stakeholders," *id.* at 22:3-5, which "cannot be adequately compensated in damages." *Id.* at 22:14-15. Moreover, the L-Band Spectrum is a "finite [g]overnment-allocated resource," and thus the "opportunity for AST to obtain usage rights to the L-[B]and [S]pectrum is unique" and "[n]o amount of money could recreate" that opportunity if Inmarsat's breaches caused regulatory approval to fail. *Id.* at 22:6-13.

The Bankruptcy Court entered an order (the "**Order**") on January 30, 2026 granting the Emergency Motions and denying Inmarsat's oral motion for a stay pending appeal. *See* Ex. B.[6]

---

[6]      The Bankruptcy Court did not "summarily" deny Inmarsat's stay request, as Inmarsat has claimed. *See* Dist. Ct. Dkt. No. 3. at 8. In its Decision, the Bankruptcy Court carefully determined that (1) Inmarsat has no chance of success on the merits,

## VIII. Inmarsat Appeals and the District Court Grants the Stay Pending Appeal.

On February 2, 2026, Inmarsat appealed the Bankruptcy Court's Order and Decision to the United States District Court for the District of Delaware (the "**District Court**"). On February 3, 2026, Inmarsat filed an emergency motion to stay the Bankruptcy Court's Order pending appeal. *See* Dist. Dkt. No. 3. The District Court granted Inmarsat's motion by entering the Stay Order earlier today (February 27, 2026), *see* Ex. L, imposing a stay of the Bankruptcy Court's Order pending appeal (the "**Stay Pending Appeal**") The Stay Order granted Inmarsat's stay request despite Inmarsat's failure to show, among other things, that it would be irreparably harmed absent the Stay Pending Appeal or that Inmarsat is likely to succeed on the merits. AST and Ligado filed notices of appeal of the Stay Order this evening and, just *minutes* after they filed their notices of appeal, Inmarsat filed papers with the FCC opposing the FCC Application.

AST now moves on an extremely urgent basis to vacate the Stay Order (and thereby reinstate Inmarsat's obligation to support the FCC Application) by **<u>noon</u>** on Monday, March 2, 2026.

---

(2) Inmarsat cannot show irreparable harm, and (3) the balance of the harms favors Ligado and AST.

## JURISDICTION

**A.    The Court Has Jurisdiction Under 28 U.S.C. § 1292(a)(1) Because the Stay Order Has the Practical Effect of an Injunction with Irreparable Consequences.**

This Court has appellate jurisdiction over interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1). This jurisdiction applies to interlocutory orders issued by district courts sitting in their bankruptcy appellate capacity. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992); *see also Jackson v. Danberg*, 656 F.3d 157, 162 (3d Cir. 2011) (asserting "jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) to consider" the District Court's denial of a stay.).   An order is appealable under section 1292(a)(1) if, regardless of its label, it has the "practical effect" of granting, modifying or denying an injunction and has "serious, perhaps irreparable consequences." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 79, 67 L. Ed. 2d 59 (1981).

Here, the Stay Order, which stayed the Bankruptcy Court's grant of injunctive relief is precisely such an order.  The Stay Order not only modifies the Bankruptcy Court's Order requiring Inmarsat's specific performance, but it also has the practical effect of denying AST, perhaps permanently, the injunctive relief to which the Bankruptcy Court held AST is entitled.  If Inmarsat does not withdraw its opposition to the FCC Application before March 2, 2026, that bell cannot be unrung. The consequences are both serious and irreparable: the initial FCC comment period

expires on March 2, and AST will have little hope of realizing the regulatory support that it bargained for without vacatur of the Stay Order. The Stay Order will endanger, and perhaps extinguish, AST's unique, time-sensitive opportunity to secure the regulatory approvals necessary to consummate the AST Transaction and Ligado's Plan. *See* Manner Decl. ¶¶ 25-28. Which is precisely the kind of harm that confers this Court with appellate jurisdiction. *See Matter of Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997) (exercising §1292(a)(1) jurisdiction over a stay order because without it, appellants would "have little hope of receiving their rightful payment").

**B.** **The Court Also Has Jurisdiction Under 28 U.S.C. § 158(d)(1) Because the Stay Order Is Tantamount to a Final Order.**

This Court also has jurisdiction over an appeal of the Stay Order pursuant to 28 U.S.C. § 158(d)(1). Section 158(d)(1) grants the courts of appeal jurisdiction over "appeals from all final decisions, judgments, orders, and decrees" entered by a district court sitting as a bankruptcy appellate court. 28 U.S.C. § 158(d)(1). This Court "has consistently recognized that finality must be viewed pragmatically in bankruptcy appeals." *In re Mkt. Square Inn, Inc.*, 978 F.2d 116, 120 (3d Cir. 1992). An order is final where its "practical effect" is to "resolve [appellant's] appeal on the merits." *In re Revel AC, Inc.*, 802 F.3d at 567; *see also Haberern v. Lehigh & N. E. Ry. Co.*, 554 F.2d 581, 584 (3d Cir. 1977) (indefinite stay order appealable where delay so prolonged that "in a very practical sense the stay order is a final one.").

In *Revel*, the *denial* of a stay was a final order conferring this Court with appellate jurisdiction because the imminent closing of an asset sale would have mooted the appeal. 802 F.3d at 567. The practical effect of the Stay Order is the same here. It effectively resolves this appeal on the merits by allowing the March 2, 2026 FCC deadlines to expire, and allowing Inmarsat to oppose the FCC Application during the pendency of the Stay Pending Appeal, thereby rendering the Bankruptcy Court's Order requiring specific performance unachievable, even if it is ultimately affirmed on appeal. The Stay Order thus prevents a "full airing of [the] issues on appeal and a decision on the merits," satisfying the finality standard this Court articulated in *Revel*. 802 F.3d at 567.

In short, if the Stay Order is not vacated, "the issues raised here are effectively unreviewable on appeal from a final judgment." *In re Trans World Airlines, Inc.*, 18 F.3d 208, 217 (3d Cir. 1994). This could have serious, irreparable consequences given that, as the Bankruptcy Court found, Inmarsat's objection to the FCC Application, or failure to support the Application could cause "catastrophic harm." Ex. A 22:3-5.

## THE STAY PENDING APPEAL SHOULD BE VACATED ON AN EXPEDITED BASIS

Appellate Rule 8 governs the issuance of an order modifying an injunction while an appeal is pending. Appellate Rule 8 provides that this Court has the discretion to issue "an order suspending [or] modifying . . . an injunction while an

appeal is pending." *See* FED. R. APP. P. 8(a)(1), 8(a)(2) ("A motion for the relief

mentioned in [Appellate] Rule 8(a)(1) may be made to the court of appeals or to one

of its judges."); *accord* FED. R. BANKR. P. 8025(d)(3) (the Bankruptcy Rules "do[]

not limit the power of a court of appeals or any of its judges to: . . . vacate . . . a stay

. . . while an appeal is pending").

Furthermore, Appellate Rule 8(a)(2)(D) and Local Rule 27.7 gives this Court

discretion to hear a litigant's request to vacate a stay pending appeal on an expedited

basis before a single judge to the extent time constraints preclude the manner being

heard before a panel. As set forth previously, if the Stay Pending Appeal is not

vacated prior to March 2, 2026, AST's appeal of the Stay Order may be rendered

moot. To protect AST's right to have its appeal heard on the merits, this Court

should hear this Motion on an expedited basis, including by a single judge if needed.

## ARGUMENT

### THE STAY PENDING APPEAL SHOULD BE VACATED

A stay pending appeal "is an extraordinary remedy" granted "only in limited

circumstances." *Holland v. Rosen*, 895 F.3d 272, 285 (3d Cir. 2018). Before the

District Court, Inmarsat bore "the burden of showing" a stay is justified, *In re W.R.*

*Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012). The inquiry turns on four factors:

"(1) whether the stay applicant has made a strong showing [it] is likely to succeed

on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Revel*, 802 F.3d at 568. If the movant fails to show "either" irreparable harm or likelihood of success, the stay should be denied without further analysis." *Id*. at 571. This analysis is the same when considering whether to vacate a stay pending appeal. *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (applying the same analysis when considering a motion to vacate a stay pending appeal).

Inmarsat cannot show that a stay of the Bankruptcy Court's Order pending appeal is warranted and therefore the Stay Order must be vacated.

### A.     Inmarsat Cannot Show Irreparable Harm.

As properly determined by the Bankruptcy Court, Ex. A 21:25-22:2, Inmarsat will not suffer irreparable harm during its appeal by supporting the FCC Application because there is no risk, let alone "*likelihood*," of "actual and imminent" injury. *Revel*, 802 F.3d at 568. The Proposed NGSO System is not approved, launched or operational. Manner Decl. ¶ 30. Therefore, there is zero possibility of harmful interference with Inmarsat's satellites during its appeal.

After the Proposed NGSO System is approved and launched, if Inmarsat believes that the satellites do not comply with the limits in the Amended Inmarsat Cooperation Agreement, Inmarsat "can invoke the dispute resolution procedures" contained in the Mediation Agreement, as it previously told the Bankruptcy Court.

*See* Ex. J ¶ 37. Indeed, the Coordination Breach Procedures provide that, if an alleged "Coordination Breach" is not cured within 24 hours of Inmarsat notifying Ligado or AST, Inmarsat may file a "Coordination Breach Complaint" with a neutral arbitrator, who must hold a hearing within five days, and issue a ruling within seven days. *See* Ex. C-1 § 3. If there were a breach, this ruling must include a corrective injunction that must be implemented within 24 hours. *See id.* These periods "may be reduced" for any breach "alleged to impact the availability of Inmarsat safety services." *Id.* Thus, as the Bankruptcy Court determined, the Mediated Agreement provides Inmarsat with "protections against harmful interference" with Inmarsat's satellites. Ex. A 19:23-24.

Inmarsat has argued that the Coordination Breach Procedures will not provide it protection because the metes and bounds of the permitted operations of the Proposed NGSO System were "never clarified" and never "expressly set." *See* Dist. Dkt. No. 38 ¶ 28; *see also* Stay Mem. at. 12. This is flatly contradicted by the Mediated Agreement. As that Agreement contemplates, *see* Ex. C-1 at nn.5-6, the limitations imposed on the operations of the Proposed NGSO System are expressly set forth in the Inmarsat-AST Agreement and the Amended Inmarsat Cooperation Agreement, the latter of which contains dozens of pages concerning the geographic, technical, power and other parameters which Inmarsat and Ligado must meet to limit harmful interference with one another's operations. *See* Manner Decl. ¶ 7, 32.

Nor is there any merit to Inmarsat's contention that, notwithstanding the plain terms of the Mediated Agreement, the AST-Inmarsat Agreement and the Amended Inmarsat Cooperation Agreement, coordination (and thus, protection from interference with Inmarsat's satellite services) is lacking because Ligado's prior geostationary orbit system had only one satellite whose orbit is supposedly 50 times further from earth than the multiple satellites that will comprise the Proposed NGSO System. *See* Dist. Dkt. No. 38 ¶¶ 9, 11-12, 28; *see also* Stay Mem. at 3. Inmarsat, Ligado and AST expressly agreed that, with respect to the Proposed NGSO System, "the operations of all AST and Ligado spacecraft, *individually and taken as a whole*, and *regardless of orbit*, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement." Ex. C-1 § 2. These provisions would have been unnecessary had the parties not intended to account for the distinct features of the Proposed NGSO System when they agreed that it would be operated within the bounds of the Amended Inmarsat Cooperation Agreement. *See Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 433 (S.D.N.Y. 2012) (it "is black-letter law" that "courts are to construe contract terms so as, where possible, to give rational meaning to all provisions in the document").

Accordingly, the Coordination Breach Procedures allow Inmarsat to avail itself of highly expedited injunctive relief if it alleges a Coordination Breach. Thus,

even if there could be harmful interference during appeal, Inmarsat would have an adequate remedy. *Revel*, 802 F.3d at 571 ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *Maxus Energy Corp.*, 633 B.R. 215, 220 (Bankr. D. Del. 2021) (possibility that "adequate compensatory or other corrective relief will be available" weights "heavily against" irreparable harm); *In re Essar Steel Minn. LLC*, 2025 WL 974571, at *6 (D. Del. Apr. 1, 2025) (no irreparable harm where "any potential harm can be redressed by a legal remedy").

Finally, nothing in the Bankruptcy Court's Order requires Inmarsat to lie or make misrepresentations to the FCC. That Order merely requires Inmarsat to *support* the FCC Application, as Inmarsat has been paid *nearly half a billion* dollars to do. In any event, "the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement," Ex. C-1 § 2, because the Inmarsat-AST Agreement and the Amended Inmarsat Cooperation Agreement incorporate Sections 2 and 3 of the Mediated Agreement, which, as shown above, contain AST's enforceable promise to operate the Proposed NGSO System within the metes and bounds of the Amended Inmarsat Cooperation Agreement, and provide Inmarsat with a highly expedited remedy if the operations of the Proposed NGSO System exceeds those limits. *See*

Manner Decl. ¶¶ 30-32.  Indeed, it was on this basis that *Inmarsat itself agreed* that Ligado could represent to the FCC that "the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and Inmarsat-AST Agreement."  Ex. C-1 § 2.  So there is *zero* falsity in supporting an FCC Application that makes that very representation.

Inmarsat's failure to show irreparable harm, standing alone merits vacating the Stay Order.  *In re Mallinckrodt plc*, 2022 WL 1206489, at *1 (D. Del. Apr. 22, 2022) (denying a stay pending appeal solely because appellants "have not shown a likelihood of irreparable harm").

## B.     Inmarsat Will Not Succeed on the Merits.

This Court should vacate the Stay Order because Inmarsat will not succeed on the merits.

### ***The Bankruptcy Court correctly interpreted the Mediated Agreement***.  The District Court incorrectly determined that Inmarsat has a "reasonable chance" of succeeding on its argument that further amendments to the Amended Inmarsat Cooperation Agreement (in the form of further coordination commitments) are necessary (a) before Ligado and AST can represent in the FCC Application that "the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement," Ex C-1 § 2 and thus (b) before Inmarsat's Regulatory Support Obligations are triggered.  Stay Mem. at 10-11.  This

contravenes the plain language of the Mediated Agreement and is flatly contrary to Inmarsat's prior representations to the Bankruptcy Court.

AST and Ligado promised in the Mediated Agreement, the Inmarsat-AST Agreement and the Amended Inmarsat Cooperation Agreement that "the operations of the Proposed NGSO System will be consistent with and remain within the technical, geographic and other limitations of the Amended Inmarsat Cooperation Agreement." Ex. C-1 §§ 2, 3. As the Bankruptcy Court held, the Mediated Agreement "requires a statement" in the FCC Application "that coordination exists under and pursuant to these agreements, but not that some additional coordination process beyond the agreement's terms has been completed." Ex. A 18:20-23. Therefore, by executing the Inmarsat-AST Agreement and the Amended Inmarsat Cooperation Agreement, AST and Ligado could accurately represent to the FCC that operations of the Proposed NGSO System have been coordinated subject to these agreements, and nothing more is required to trigger Inmarsat's Regulatory Support Obligations. *See id.* at 19:18-20:7; *see also* Manner Decl. ¶¶ 14, 17-18, 32.

Moreover, Inmarsat's contentions that further coordination is required are belied by its own statements to the Bankruptcy Court that the only coordination required "under the plain language of the Mediated Agreement" was for AST and Ligado "to honor the existing geographic and other limits of the Cooperation Agreement (whatever they may be), and [be] bound to sign definitive documents

reflecting that commitment." Ex. J ¶ 4. As the Bankruptcy Court determined, there is no requirement for "some additional coordination process" beyond AST and Ligado's commitment that the operations of the Proposed NGSO System will be consistent with the Inmarsat-AST Agreement and the Amended Inmarsat Cooperation Agreement. *See* Ex. A 18:22-23; Manner Decl. ¶¶ 17-18, 30, 32.

### C. AST and Ligado Would Be Irreparably Harmed By If the Stay Order is Not Vacated

As the Bankruptcy Court determined, the balance of the harms strongly disfavors a stay:

> Denying specific performance would allow Inmarsat to retain $420 million so far without providing the consideration it bargained to provide. Conversely, compelling Inmarsat to honor its commitment causes Inmarsat no cognizable harm. Inmarsat agreed to these obligations, [and] has been paid. Failure to obtain the regulatory approval would likely result in failure of the [P]lan, causing catastrophic harm to the estates and their stakeholders.

Ex. A 21:23-22:5.

The FCC opened the comment period on the FCC Application on January 30, 2026. Manner Decl. ¶ 22. There is a 30-day window in which Inmarsat can provide initial comments supporting the FCC Application. *Id.* Inmarsat has already opposed the FCC Application the same day the Stay Order was entered. If the Bankruptcy Court's order remains stayed through March 2, and Inmarsat is not therefore required to retract its opposition and support the FCC Application, that bell cannot be unrung. *See id.* at ¶ 26.

The Mediated Agreement is a contract for Inmarsat's support in obtaining regulatory approval for a one-of-a-kind AST Transaction. The irreparable harm from Inmarsat's breach is the potential loss of the entire AST Transaction, and the destruction of AST's "unique" opportunity to "obtain usage rights to the L-band spectrum" that "can't be purchased on the open market." Ex. A 22:6-9; Manner Decl. ¶ 27. If Inmarsat derails the AST Transaction, "[n]o amount of money could recreate" AST's opportunity to access the L-Band Spectrum. Ex. A 22:12-13; Manner Decl. ¶ 27.

Regulatory approval of the AST Transaction is also a condition precedent to Plan consummation. If Inmarsat is allowed, contrary to the Mediated Agreement, to oppose the FCC Application, that could "result in failure of the [P]lan, causing catastrophic harm to" the Debtors "and their stakeholders." Ex. A 22:3-5. This too constitutes irreparable injury. *In re Broadstripe, LLC*, 402 B.R. 646, 658 (Bankr. D. Del. 2009) (finding irreparable harm where the absence of specific performance "could irreparably jeopardize" the debtor's "prospects for reorganization in [C]hapter 11").

The District Court incorrectly held that AST and Ligado would not be harmed by a stay pending appeal. But, the District Court ignored the fact that AST has paid Inmarsat $420 million for support in the FCC approval process that, rather than being triggered by Inmarsat's subjective satisfaction about what coordination is sufficient,

is plainly triggered by the parties' express, enforceable promise that the Proposed NGSO System will operate within the limitations of the Amended Inmarsat Cooperation Agreement.

### D. The Public Interest Disfavors a Stay.

Public policy strongly favors consummation of confirmed plans of reorganization. *In re Cont'l Airlines*, 91 F.3d 553, 565 (3d Cir. 1996) (noting the "strong public policy in favor of maximizing debtors' estates and facilitating successful reorganization."). Inmarsat's continuing breaches of the Mediated Agreement threaten to interfere with consummation of the AST Transaction and the Plan, with potentially "catastrophic harm" to Ligado's reorganization. Ex. A 22:3-5.

Meanwhile, no public interest would be harmed if Inmarsat must support the FCC Application, which seeks approval of a Proposed NGSO System that is not yet operational, and for which Inmarsat can pursue the Coordination Breach Procedures if its eventual operations cause harmful interference with Inmarsat's satellite services. This is particularly true since, as explained above, there is zero falsity in the representation contained in the FCC Application that the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and Inmarsat-AST Agreement and thus, there will be zero falsity in requiring Inmarsat to support an FCC Application that contains this statement. *See Broadstripe*, 402 B.R. at 659 ("In the face of the potential for

significant injury to the Debtors' business value and reorganization efforts" the "public interest favors granting the requested injunctive relief to enable the Debtors to attempt to reorganize in chapter 11").

## INMARSAT MUST POST A BOND TO OBTAIN A STAY

The District Court erred by not requiring Inmarsat to post a supersedeas bond before granting the Stay Pending Appeal. *See* Stay Mem. at 14. A bond should be ordered if it is needed to "secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal." *In re Tribune Co.*, 477 B.R. 465, 468 (Bankr. D. Del. 2012). If a movant seeks a stay without a bond, it "has the burden of demonstrating why the court should deviate from the ordinary full security requirement," *W.R. Grace*, 475 B.R. at 209, which requires "exceptional circumstances." *Tribune*, 477 B.R. at 478.

If the AST Transaction does not receive regulatory approval, Inmarsat is not obligated to return the "indefeasible" payments it receives under the Mediated Agreement to Ligado or AST. Ex. C-1 §§ 4, 9. Because Inmarsat's conduct could result in the loss of regulatory approval, Inmarsat must be required to protect AST against the harm that it will demonstrably suffer (*e.g.*, $520 million). Thus, in addition to the immeasurable loss from failure to consummate the AST Transaction and the Plan (which no amount of money can fix), Inmarsat's breaches of the Mediated Agreement may harm AST by at least this amount. Thus, to the extent

that this Corut does not vacate the Stay Order, it should still require any stay pending appeal to be conditioned on Inmarsat's supersedeas bond of at least $520 million. *E.g.*, *Tribune*, 477 B.R. at 484-85 (conditioning a stay on a $1.5 billion bond).

## CONCLUSION

AST respectfully requests that the Court vacate the Stay Order and grant any further or other relief as is just and proper or, in the alternative, require Inmarsat to post a supersedeas bond of no less than $520 million.

| Dated: February 27, 2026 | /s/ Jeremy Ryan |
| Wilmington, Delaware | Jeremy W. Ryan (Bar No. 4057) |

/s/ Jeremy Ryan

Jeremy W. Ryan (Bar No. 4057)
Katelin A. Morales (Bar No. 6683)
Sameen Rizvi (Bar No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:     jryan@potteranderson.com
              kmorales@potteranderson.com
              srizvi@potteranderson.com

-and-

Madlyn Gleich Primoff
**FRESHFIELDS US LLP**
3 World Trade Center
174 Greenwich Street, 51st Floor
New York, New York 10007
Telephone:  (212) 277-4000
Facsimile:  (212) 277-4001
Email:madlyn.primoff@freshfields.com
              henry.hutten@freshfields.com

*Counsel for AST & Science LLC*

## CERTIFICATE OF COMPLIANCE

1.      Pursuant to this Court's Local Appellate Rules 28.3(d) and 46.1(e), as the signatory on the foregoing document, I am admitted and a member in good standing at the Bar of this Court.

2.      Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that this motion does not comply with the type-volume limits set forth in Federal Rule of Appellate Procedure 27(d)(2) because it contains 7,216 words; however, AST is submitting a motion to exceed that word count contemporaneously herewith.


Dated: February 27, 2026                 */s/ Jeremy W. Ryan*_____
Wilmington, Delaware                      Jeremy W. Ryan (Bar No. 4057)